**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jicarilla Apache Nation | U.S. Department of the Interior |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Jill Elise Grant
Nordhaus Law Firm, LLP
1401 K Street, N.W., Suite 801
Washington, DC 20005

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**● C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E. General Civil (Other)**    **OR**    **○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. § 2201 and 5 U.S.C. §§ 701- 706 Administrative Procedure Act; review of final agency decision

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE   May 2, 2007       SIGNATURE OF ATTORNEY OF RECORD   *Joi Edx grnt*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JICARILLA APACHE NATION,<br>P.O. Box 507<br>Dulce, NM 87528-0507 | )<br>)<br>)<br>)<br>) |  |
| Plaintiff | ) |  |
| v. | )<br>) | Civil Action File No. _____ |
| U.S. DEPARTMENT OF THE INTERIOR,<br>1849 C Street, NW<br>Washington, DC 20240 | )<br>)<br>)<br>) |  |
| Defendant | )<br>)<br>) |  |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Introduction

1.      Plaintiff, the Jicarilla Apache Nation ("Jicarilla"), brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701- 706, seeking judicial review of final agency action.  Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment setting aside the decision of the Department of the Interior ("Department") in *Vastar Resources, Inc.*, MMS-98-0131-IND, *et al.* (March 28, 2007), as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, *see* 5 U.S.C. § 706.  In addition, Plaintiff seeks injunctive relief, pursuant to 28 U.S.C. § 2202, requiring the Department to enforce the underlying Orders to Perform issued by the Minerals Management Service ("MMS") in *Vastar Resources, Inc.*, MMS-RVD-OG:98-0230 (May 27, 1998); *Exxon Co., U.S.A.*, MMS-RVD-OG:98-0229 (May

-1-

27, 1998); *Burlington Resources Oil & Gas Co. L.P.,* MMS-RVD-OG:98-0275 (June 10, 1998); *Union Texas Petroleum Corp.,* MMS-RVD-OG:99-0050 (Feb. 19, 1999); *Unicon Producing Co.,* 99-0091 (March 25, 1999); *Southern Exploration Co.,* MMS-RVD-OG:99-0049 (Feb. 19, 1999); *Williams Production Co.,* MMS-RVD-OG:99-052 (Feb. 23, 1999); and *Mobil Exploration & Producing U.S. Inc,* MMS-RVD-OG:99-0092 (April 16, 1999).

## Parties

2.      Plaintiff Jicarilla Apache Nation is a federally recognized Indian tribe with a reservation located in northwest New Mexico.  Jicarilla is the lessor under various oil and gas mining leases issued beginning in the early 1950's under the Indian Mineral Leasing Act of 1938 ("IMLA"), 25 U.S.C. §§ 396a- 396g.  Pursuant to the terms of the leases, Jicarilla is entitled to royalties for oil and gas produced on the Jicarilla Apache Reservation.

3.      Defendant United States Department of the Interior is an agency of the federal government.  The Department, through the MMS and the Bureau of Indian Affairs ("BIA"), is responsible for approving and administering Indian leases and ensuring that the correct amount of royalties is paid to tribes, including Plaintiff.  *See, e.g.,* 25 U.S.C. § 396(b) (IMLA); 30 U.S.C. § 1701 (Federal Oil and Gas Royalty Management Act of 1982, or "FOGRMA"); 25 C.F.R. Part 211 (2006) (BIA mineral leasing regulations for Indian lands); 30 C.F.R. Parts 202, 206 (2006) (MMS royalty regulations).  The Department is required to conduct such activities consistent with its trust responsibility to federally recognized Indian tribes.

## Jurisdiction

4.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1362.  The United States has consented to suit pursuant to 5 U.S.C. § 702.  The decision for which review is sought is a final

agency action, as stated therein. *See also* 43 C.F.R. §§ 4.5, 4.21, 4.410; *Blue Star, Inc.*, 41 IBLA

333, 335-36 (1979); *Marathon Oil Co.*, 108 IBLA 177 (1989).

Venue

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), (e)(1), and

(e)(2) and 5 U.S.C. § 703.

Statement of Facts

The Lease Terms and Regulations

6.     Pursuant to the IMLA, Jicarilla entered into leases with oil and gas companies for oil and

gas production on the Jicarilla Apache Reservation.  These leases were entered into on BIA

Standard Lease Form 5-157 ("Lease"), and were approved by the Department.  In exchange for

royalty payments as specified in the lease, the lessee is granted the right to "drill for, mine,

extract, remove, and dispose of all the oil and natural gas deposits" on the leased portion of the

Jicarilla Apache Reservation.

7.     Royalties from Jicarilla's oil and gas leases are of vital importance to the tribe, as they

provide about half of all the revenue used to pay for essential government services on the

Jicarilla Apache Reservation, such as police, tribal courts, health care, and education.

8.     The United States, including its agencies, has a fiduciary duty to tribes which extends to

the management of tribal resources, including the management of Jicarilla's oil and gas.  *E.g.,*

*Seminole Nation v. United States,* 316 U.S. 286, 296-97 (1942) (the United States has a "moral

obligation of the highest responsibility and trust" to Indian tribes and its "conduct, as disclosed

in the acts of those who represent it in dealings with Indians, should therefore be judged by the

most exacting fiduciary standards"); *Jicarilla Apache Tribe v. Supron Energy Corp.,* 782 F.2d

-3-

855 (10th Cir. 1986) (*en banc*) (*adopting dissenting opinion at* 728 F.2d 1555), *modified,* 793 F.2d 1171, *cert. denied,* 479 U.S. 970 (1986) (Secretary of the Interior must act as a fiduciary in the administration of tribal oil and gas reserves).

9.      Accordingly, the Federal Oil and Gas Royalty Management Act states that the "Secretary should aggressively carry out his trust responsibility in the administration of Indian oil and gas." 30 U.S.C. § 1701(a)(4); *see BP America Production Co. v. Burton,* 127 S.Ct. 638, 648 (2006).

10.     The MMS royalty regulations also acknowledge the United States' trust responsibility with respect to the management of Indian oil and gas, providing that:

> the regulations in this subpart are intended to ensure that the trust responsibilities of the United States with respect to the administration of Indian oil and gas leases are discharged in accordance with the requirements of the governing mineral leasing laws, treaties, and lease terms.

30 C.F.R. § 206.150(d)(1988), *recodified at* 30 C.F.R. § 206.170(e)(2006).

11.     The leases at issue in this case contain a provision known as the "major portion price" provision, which provides as follows:

> 'value' for the purposes hereof [the calculation of royalties] may, in the discretion of the Secretary, be calculated on the basis of the highest price paid or offered . . . at the time of the production for the major portion of the oil of the same gravity, and gas, and/or natural gasoline, and/or all other hydrocarbon substances produced and sold from the field where the leased lands are situated.

Lease ¶ 3(c).

12.     Prior to 1988 the Department's regulations governing the calculation of the major portion price exactly mirrored the provisions of the Jicarilla lease terms. *Compare* 30 C.F.R. §206.153(a)(3)(ii) (prior to 1988) *with* Lease ¶ 3(c).

13.    In 1988, the Department promulgated new regulations for the calculation of the major

portion price. 30 C.F.R. §§ 206.152(a)(3), 206.153(a)(3) (1988), *recodified* at 30 C.F.R. §§

206.172(a)(3), 206.173(a)(3)(1997).    Rather than basing the value of production for royalty

purposes on the "*highest* price paid or offered" for the "*major portion*" of gas, the 1988

regulations based the value of production for royalty purposes on a volume-weighted *median*

price for the *majority* of gas sold, as follows:

> The major portion will be calculated using like-quality gas sold under arm's-length
> contracts from the same field (or, if necessary to obtain a reasonable sample, from the
> same area) for each month. All such sales will be arrayed from the highest price to the
> lowest price (at the bottom). *The major portion is that price at which 50 percent (by
> volume) plus 1 mcf of gas (starting from the bottom) is sold.*

30 C.F.R. § 206.152(a)(3)(ii) (1988) (emphasis added).

14.    The Department's own regulations mandate that:

> "[i]f the specific provisions of any . . . oil and gas lease subject to the requirements of this
> subpart are inconsistent with any regulation in this subpart, then the *lease . . . shall
> govern to the extent of that inconsistency.*"

30 C.F.R. § 206.150(b) (1988), *recodified at* 30 C.F.R. § 206.170(b) (emphasis added).

<u>The Major Portion Orders</u>

15.    Pursuant to the leases and in discharge of its trust responsibilities, MMS determined

major portion prices for the Jicarilla Apache Reservation.    MMS then issued the Orders to

Perform listed in paragraph 1 ("major portion orders"), which directed lessees to use the major

portion prices to calculate, report, and pay additional royalties on all of the Jicarilla leases for

which they were the royalty payors for the period January 1984 through June 1995.

16.    In addition to the major portion orders listed in paragraph 1, MMS issued similar major

portion orders to approximately 30 other oil and gas companies, including the following three

orders: *Robert Bayless*, MMS-RVD-OG:98-0232 (May 27, 1998); *Dugan Production Co.*, MMS-RVD-OG: 98-0228 (May 27, 1998); *Merrion Oil & Gas Corp.*, MMS-RVD-OG:98-0378 (Sept. 15, 1998).

17.     All of the major portion orders stated that "In carrying out the trust responsibility of the United States in the administration of Indian oil and gas leases, the Minerals Management Service (MMS) has long recognized the primacy of the lease terms." Major portion orders at 1. The orders stated specifically that lessees were obligated to "comply with Section 3(c) **Rental and royalty**, of the Indian lease terms," and directed lessees to use the major portion prices calculated by MMS and attached to the order in determining the value of production for royalty purposes and paying any additional royalties due to Jicarilla.  These major portion prices were based on Jicarilla's royalty-in-kind ("RIK") contracts, which represented approximately 25% of the arm's-length sales of gas from the reservation.

18.     Some lessees subject to the major portion orders referenced in paragraph 16 complied with the orders and paid additional royalties, and some settled with MMS and Jicarilla.  Many lessees appealed the major portion orders pursuant to 30 C.F.R. part 290 (1999), such as the lessees listed in paragraph 1, and including Robert Bayless ("Bayless"), Dugan Production Corporation ("Dugan"), and Merrion Oil & Gas Corporation ("Merrion"), referenced in paragraph 16.

<u>The Department's Major Portion Decisions</u>

19.    The appeals brought by Bayless, Dugan, and Merrion were the first appeals of the MMS major portion orders, and were addressed first by the Department. On December 22, 2000, the Department issued final decisions (signed by the Assistant Secretary for Indian Affairs) in all three of these appeals. *Robert L. Bayless,* MMS-98-0132-IND; *Dugan Production Corp.,* MMS-98-0130-IND; *Merrion Oil & Gas Corp.,* MMS-98-0228-IND (collectively, the "Bayless Decisions"). The three decisions were very similar, and in them the Department found, *inter alia,* that:

a)    the MMS major portion regulations, as revised in 1988, do not arrive at the "highest price paid or offered" for Jicarilla's gas, as required by the leases, and so the two are inconsistent and the leases take precedence over the regulations (*Bayless* at 5, *Dugan* at 5-6, *Merrion* at 5);

b)    Jicarilla's RIK contracts represented 25% of arm's length sales from the reservation, and 25% qualifies as a "major portion" under the leases (*Bayless* at 4, *Dugan* at 5, *Merrion* at 4-5);

c)    since many of the prices Jicarilla received under its RIK contracts were based on Natural Gas Policy Act regulated prices, they were the same prices as other sellers received (*Bayless* at 4, *Dugan* at 6 n. 4, *Merrion* at 5); and

-7-

d)    the major portion methodology employed by MMS to determine the major portion prices for the Jicarilla Apache Reservation was reasonable (*Bayless* at 5, *Dugan* at 5-6 and 7-8, *Merrion* at 5).

20.    The Bayless Decisions remained the Department's final decision on the major portion methodology for Jicarilla gas until the Department issued the decision that is the subject of this appeal, *Vastar Resources, Inc.*, MMS-98-0131-IND, *et al.* (March 28, 2007) (the "Vastar Decision"). In the interim, several companies paid or settled based on the Bayless Decisions.

21.    In response to lessees' appeals of the major portion orders described in paragraphs 1 and 15, MMS issued field reports that upheld the Department's major portion methodology for gas produced from the Jicarilla Apache Reservation and recommended that the Department deny the appeals. *See* MMS field reports in the cases listed in paragraph 1, all dated Oct. 17, 2001, at 1.

22.    Despite the existing Bayless Decisions and the recommendations of the MMS field reports to deny the remaining appeals, the Department, through the Assistant Secretary for Indian Affairs, issued the Vastar Decision upholding the appeals.

23.    The Vastar Decision acknowledged that the lease terms govern when they differ from the regulations and that the leases contained a "major portion" provision which required that value "for royalty purposes . . . be calculated on the basis of the highest price paid or offered at the time of production for the major portion of gas sold from the field where the lease lands are situated." Vastar Decision at 3, referencing Lease ¶ 3(c). However, the Department stated,

without discussion, that since "similar language" appears in 25 C.F.R. § 211.13(a)(1987) and 30

C.F.R. § 206.152(a)(3)(ii)(1991), "the lease term and the regulations are consistent, and the

provisions of 30 C.F.R. § 206.150(b), concerning the primacy of lease terms where they differ

from regulations, is [sic] inapplicable." *Id.*

24.    Nowhere in the Vastar Decision did the Department discuss that there are major

substantive differences between Lease ¶ 3(c) and the regulations (described above in paragraphs

11-13). Nor did the Department discuss its reasons for deviating from the Bayless Decisions or

the MMS field reports on this point. Nevertheless, the entire Vastar Decision is premised on the

fact that the MMS major portion methodology for the Jicarilla Apache Reservation was

inconsistent with the MMS major portion regulations at 30 C.F.R. §§ 206.152(a)(3),

206.153(a)(3)(1988).

25.    The Department has a long history of failure in the administration of oil and gas

royalties. Twenty-five years ago, after public outrage over allegations of royalty underpayment,

fraud, and outright theft, the Secretary of the Interior established the Linowes Commission to

investigate. After an extensive investigation, the Linowes Commission concluded:

> Management of royalties for the nation's energy resources has been a failure for more
> than 20 years. Because the Federal government has not adequately managed this
> multibillion dollar enterprise, the oil and gas industry is not paying the royalties it rightly
> owes. . . . The results of individual audits, which have often uncovered large
> underpayments, suggest that hundreds of millions of dollars due the U.S. Treasury, the
> States, and Indian tribes are going uncollected every year.

Report of the Commission, Fiscal Accountability of the Nation's Energy Resources (Jan. 1982), at xv. *See also* H.R. Rep. No. 97-859 (1982), *reprinted in* 1982 U.S.C.C.A.N. 4268, 4269-70 (emphasizing the importance of this lost revenue to Indian tribes).

26.     The Department's failures have continued to this day, as numerous Congressional hearings and Office of Inspector General reports attest. *See, e.g.,* Final Report on an Audit of the Minerals Management Service Audit Offices, OIG 2003-I-0023 (March 31, 2003); Hearing on "Interior Department: A Culture of Managerial Irresponsibility and Lack of Accountability?" before the Subcomm. on Energy & Resources of the H. Gov't Reform Comm., 109th Cong. (Sept. 13, 2006) (testimony of Earl E. Devaney, Inspector General, Dep't of the Interior).  As the Department's Inspector General recently summed up:

> Simply stated, short of a crime, anything goes at the highest levels of the Department of the Interior. . . . Numerous OIG reports . . . have chronicled such things as complex efforts to hide the true nature of agreements with outside parties; intricate deviations from statutory, regulatory and policy requirements to reach a predetermined end; palpable procurement irregularities; massive project collapses; bonuses awarded to the very people whose programs fail; and indefensible failures to correct deplorable conditions in Indian Country.

*Id.* at 5-6.

### Count One

27.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 2 - 26 of this Complaint.

28.     The Department is an agency under the APA, 5 U.S.C. § 701(b)(1).

29.     The Vastar Decision is a final action of the Department from which no further administrative appeal is available, as stated therein. *See also* 43 C.F.R. §§ 4.5, 4.21, 4.410; *Blue Star, Inc.*, 41 IBLA 333, 335-36 (1979); *Marathon Oil Co.*, 108 IBLA 177 (1989).

30.    Final agency action for which there is no other adequate remedy in a court is subject to judicial review. 5 U.S.C. § 704.

31.    The Vastar Decision is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, in violation of 5 U.S.C. § 706.

Count Two

32.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 2-26 of this Complaint.

33.    The Department's trust responsibility to Indian tribes, and in particular its trust responsibility to administer Indian oil and gas according to "not merely the minimal requirements of administrative law, but . . . also . . . the more stringent standards demanded of a fiduciary," *Supron,* 728 F.2d at 1563, is acknowledged by statute, regulation, and case law, as discussed in paragraphs 8-10.

34.    The Department violated its trust responsibility to the Jicarilla Apache Nation by failing to enforce the major portion provisions of Lease ¶ 3(c).

Claim for Relief

WHEREFORE, Plaintiff Jicarilla Apache Nation hereby prays for: (1) a declaratory judgment setting aside the Department's decision in *Vastar Resources, Inc.,* MMS-98-01310-IND, and declaring the decision unlawful and of no force or effect; (2) an injunction compelling the enforcement of the underlying major portion orders listed in paragraph 1; and (3) an award to Plaintiff of attorneys' fees and costs incurred related to this litigation, and any such other relief as the Court deems just and proper.

Respectfully submitted,

Jill Elise Grant

Jill Elise Grant (D.C. Bar No. 358306)
Nordhaus Law Firm, LLP
1401 K Street, NW
Suite 801
Washington, DC 20005
202-530-1270

Counsel for the Jicarilla Apache Nation

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of Plaintiff's Complaint For Declaratory And

Injunctive Relief were served on this _2nd_ day of May, 2007 by hand-delivery or certified mail to

the following:

Alberto R. Gonzales
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave, N.W.
Room 5111
Washington, D.C. 20530-2000

Jeffrey A. Taylor
U.S. Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Washington, DC 20530

Carl J. Artman, Assistant Secretary
U.S. Department of Interior
Bureau of Indian Affairs
1849 C Street, N.W.
Room 4160
Washington, D.C. 20240

Howard Chalker
U.S. Department of Interior
Land and Minerals Management
Policy and Management Improvement
Policy and Appeals Division
1849 C Street, N.W.
Room 5560
Washington, D.C. 20240

_Jill Elise Grant_
Jill Elise Grant