## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JICARILLA APACHE NATION | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:07-cv-00803-RLJ |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF THE INTERIOR, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| VASTAR RESOURCES, INC., UNION | ) | |
| TEXAS PETROLEUM, AND UNICON | ) | |
| PRODUCING COMPANY, | ) | |
| | ) | |
| Intervenor-Defendants. | ) | |
| _____ | ) | |

## FEDERAL DEFENDANT'S MEMORANDUM
## IN RESPONSE TO PLAINTIFF'S MOTION FOR
## SUMMARY JUDGMENT

## TABLE OF CONTENTS

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  The Jicarilla Leases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   The Major Portion Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.  Application of the Major Portion Analysis to the Jicarilla Apache
       Tribal Leases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D. The MMS Orders to Perform . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    E. The Bayless Decisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    F. The Vastar Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.        The Vastar Decision Is Not an Unexplained Departure from Agency Precedent. 12

    II.       The Vastar Decision Correctly Found That the Jicarilla Lease Terms and the
          Regulations are Consistent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    III.      The Vastar Decision Is Not Contrary to DOI's Fiduciary Duty to the Jicarilla  . 16

    IV.      The Vastar Decision Is a Reasonable Interpretation of the Regulations and
          Should be Upheld. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          A.       The Jicarilla Major Portion Methodology Incorrectly Relied on Less than
              50 Percent of the Arm's Length Sales.  . . . . . . . . . . . . . . . . . . . . . . . . . . 18

          B.       The RIK Sales Were Improperly Extrapolated to Reflect Other Sales
              on the Reservation.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

          C.       The Jicarilla Major Portion Methodology Did Not Use Like-Quality
              Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

D.    The Designation of the Reservation as the "Field" or "Area" Was Contrary to the Regulations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

E.    The Sales Values Were Not Calculated on a Monthly Basis . . . . . . . . . 20

V.    Even Assuming Arguendo, That the Court Finds the Vastar Decision Flawed, the Only Remedy Is Remand to the Agency. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

*Baltimore Gas & Electric Co. v. NRDC,*
    462 U.S. 87 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Belville Mining Co. v. U.S.,*
    999 F.2d 989 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bowles v. Seminole Rock & Sand Co.,*
    325 U.S. 410 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.,*
    419 U.S. 281  (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Champion Int'l.Corp. v. EPA,*
    850 F.2d 182 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Chevron U.S.A. v. NRDC,*
    467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Citizens to Preserve Overton Park v. Volpe,*
    401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cobell v. Norton,*
    240 F.3d 1081 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cotton Petroleum Corp. V. New Mexico,*
    490 U.S. 163 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Ethyl Corp. v. EPA,*
    541 F.2d 1 (D.C. Cir.)(en banc), <u>cert</u>. <u>denied</u>,  426 U.S. 941 (1976)  . . . . . . . . . . . . . . . 10

*Druid Hills Civic Ass'n, Inc. v. Federal Crop Ins. Corp. v. Merrill,*
    332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Federal Highway Admin.,*
    772 F.2d 700, n. 9 (11th Cir 1985), <u>cert. denied</u>, 488 U.S. 819 (1988) . . . . . . . . . . . . . 10

*Fla. Power & Light Co. v. Lorion,*
    470 U.S. 729 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gray v. Johnson,*

395 F.2d 533 (10th Cir.), cert. denied, 392 U.S. 906 (1968) . . . . . . . . . . . . . . . . . . . . . . 13

Kleppe v. Sierra Club,
 427 U.S. 390 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Marsh v. Oregon Natural Res. Council,
 490 U.S. 360 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Motor Vehicle Mfrs. Ass'n v. State Farm Mutual,
 463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

North Buckhead Civic Ass'n v. Skinner,
 903 F.2d 1533 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Pawnee v. United States,
 830 F.2d 187 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Saulque v. United States,
 663 F.2nd 968 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Service v. Dulles, 354 U.S. 363 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Shoshone Indian Tribe of the Wind River Reservation v. United States,
 56 Fed. Cl. 649 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Sierra Club v. U.S. Army Corps of Eng'rs,
 935 F. Supp. 1556 (S.D. Ala. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Spanish Int'l Broadcasting Co. v. FCC,
 385 F.2d 615 (D.C. Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Strycker's Bay Neighborhood Council v. Karlen,
 444 U.S. 223 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Thomas Jefferson Univ. v. Shalala,
 512 U.S. 504 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Trujillo v. General Electric Co.,
 621 F.2d 1084 (10th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United Gas Improvement Co. v. Callery Properties,
 382 U.S. 223(1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States ex rel. Accardi v. Shaughnessy,*
    347 U.S. 260 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Allegheny-Ludlum Steel Corp.,*
    406 U.S. 742 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Navajo Nation,*
    537 U.S. 488 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Vitarelli v. Seaton,*
    359 U.S. 535 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## FEDERAL STATUTES

5 U.S.C. §§ 551 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

25 U.S.C. § 396 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## FEDERAL REGULATIONS

25 C.F.R. Part 211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

25 C.F.R. § 211.13(a) (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

30 C.F.R. § 206.103 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

30 C.F.R. § 206.150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-16

30 C.F.R. § 206.150(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

30 C.F.R. § 206.151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

30 C.F.R. § 206.152(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7, 19, 20

30 C.F.R. § 206.153(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

30 C.F.R. §§ 206.170-206.181 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4

30 C.F.R. § 206.174 (a)(4)(iii) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| JICARILLA APACHE NATION ) | |
| ) | |
| Plaintiff, ) | No. 1:07-cv-00803-RLJ |
| v. ) | |
| ) | |
| U.S. DEPARTMENT OF THE INTERIOR, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| VASTAR RESOURCES, INC., UNION ) | |
| TEXAS PETROLEUM, AND UNICON ) | |
| PRODUCING COMPANY, ) | |
| ) | |
| Intervenor-Defendants. ) | |
| _____ ) | |

**FEDERAL DEFENDANT'S MEMORANDUM
IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

The Jicarila Apache Nation (Jicarilla) challenges a decision by the Assistant Secretary of

the Interior for Indian Affairs, U.S. Department of the Interior (DOI) in *Vastar Resources, Inc.*,

MMS-98-0131-IND (March 28, 2007) (*Vastar*) setting aside the Minerals Management Service's

(MMS) major portion methodology for gas produced on Jicarilla leases. The Jicarilla allege that

the decision in *Vastar* is arbitrary, capricious, an abuse of discretion and otherwise not in

accordance with law in violation of the Administrative Procedure Act (APA). 5 U.S.C. § 706.

The Jicarilla argue that DOI failed to explain its departure from alleged agency precedent. Pl.

Mem. at 1. The Jicarilla seek a declaratory judgment setting aside the *Vastar* decision and

injunctive relief directing DOI to enforce the underlying MMS Orders to Perform. In the

alternative, the Jicarilla seek an order directing the DOI to develop a new methodology to

enforce the gas leases. Pl. Mem. at 1-2.

However, the Jicarilla are not entitled to any of the relief sought. DOI properly determined that the MMS major portion methodology is inconsistent with MMS regulations. In addition, the Jicarilla have failed to show how DOI could formulate a major portion analysis methodology given the factual limitations of the information available on the leases or other readily available sources. Therefore, the Court should deny the Jicarilla's motion for summary judgment.

## BACKGROUND

The *Vastar* decision at issue in this case is the result of an appeal by Vastar of MMS Orders to Perform that directed it to calculate royalties using a major portion methodology that MMS and the Jicarilla had agreed upon. The requirement to use a major portion methodology is in recognition that the price paid for Indian gas may not be reflective of the actual market value because the gas may be sold under non-arm's length contracts. However, the methodology developed by the Jicarilla and agreed to by MMS is complicated by the nature of gas production on the Jicarilla Apache Reservation. Those legal and factual complications are discussed below.

### A.    The Jicarilla Leases

DOI approves oil and gas leases on Indian lands pursuant to the Indian Mineral Leasing Act (IMLA). 25 U.S.C. § 396a-g. Under that leasing statute, lease terms, and regulations, lessees must pay royalties calculated as a specified percentage of the value of the production removed or sold from the lease. 25 U.S.C. § 396-a-g; 25 C.F.R. Part 211; 30 C.F.R. §§ 206.170-206.181; BIA Standard Lease Form 5-157 (Indian Lease). During the time at issue in this case, 1984 through 1985, Vastar Resources, Inc., Union Texas Petroleum and Unicon Producing

Company (collectively, Vastar) paid royalties for natural gas leases issued under these

authorities on the Jicarilla Apache Reservation.  A.R. Supp. at 2.

The Jicarilla leases all contain the standard language of Indian Lease ¶ 3(c)  that
provides:

> "value" for the purposes hereof may, in the discretion of the Secretary, be calculated on
> the basis of the highest price paid or offered . . . at the time of production for the major
> portion of the oil of the same gravity, and gas, and/or natural gasoline, and/or other
> hydrocarbon substances produced and sold from the field where the leases lands are
> situated . . . . The actual amount realized by the lessee from the sale of said products may,
> in the discretion of the Secretary, be deemed mere evidence of or conclusive evidence of
> such value.

A.R. at 1372.  This language is generally referred to as the major portion provision.

## B.      The Major Portion Regulations

In 1988, the MMS promulgated revised regulations governing the value of production

from Tribal gas leases for royalty purposes.[1]  Those regulations provide:

> For any Indian leases which provide that the Secretary may consider the highest
> price paid or offered for a major portion of production (major portion) in
> determining value of production for royalty purposes, if data are available to
> compute a major portion, MMS will, where practicable, compare the value
> determined in accordance with this section with the major portion.  The value to
> be used in determining the value of production for royalty purposes shall be the
> higher of these two values.

30 C.F.R §§ 206.152(a)(3)(i)(unprocessed gas) and 206.153(a)(3)(i)(processed gas) (1988-1995)

---

[1]Prior to 1988 the regulations were even less specific than the 1988 regulations.  The earlier
regulations provided that "[t]he value of production, for the purpose of computing royalty, shall
be the estimated reasonable value of the product as determined by the Associate Director due
consideration being given to the highest price paid for a part or for a majority of like quality in
the same field, to the price received by the lessee, to posted prices, and to other relevant
matters."  *See* 30 C.F.R. § 206.103 (1987) (pre-1988 regulations).  "In the absence of good
reason to the contrary, value computed on the basis of the highest price per barrel, thousand
cubic feet for the major portion of like quality oil, gas, or other products produced and sold from
the field or area where the leased lands are situated will be considered to be a reasonable value."
*Id.*

recodified to 30 C.F.R. §§ 206.172(a)(3)(i) and 206.173(a)(3)(i)(1996-1999)[2]

"Major portion" is defined in the regulations as "the highest price offered at the time of production for the major portion of gas production from the same field."  30 C.F.R. §§ 206.152(a)(3)(ii) and 206.153(a)(3)(ii) (1988-1995) recodified to 30 C.F.R. §§ 206.172(a)(3)(i) and 206.173(a)(3)(i)(1996-1999).  The regulations also specify how the major portion will be calculated:

> The major portion will be calculated using like-quality lease products sold under arms-length contracts from the same field (or, if necessary to obtain a reasonable sample, from the same area) for each month.  All sales will be arrayed from the highest price to the lowest price (at bottom).  The major portion is that price at which 50 percent (by volume) plus 1 mcf of the gas (starting from the bottom) is sold."

*Id*.[3]

Therefore, both the regulations and the lease provisions require that a major portion analysis be done to determine the value for royalty purposes.

---

[2]The regulations were revised effective January 1, 2000 to provide that the "major portion value is that price at which 25 percent (by volume) of the gas (starting from the highest) is sold.  30 C.F.R. § 206.174 (a)(4)(iii) (2000).  The revised regulations are not at issue in the pending case.

[3]An example of a major portion calculation, reproduced from the MMS Payor Handbook, is as follows.

| Price ($/Mcf) | Volume (Mcf) | Cumulative (%) |
|---|---|---|
| 4.00 | 200 | 100 |
| 2.50 | 100 | 80 |
| 2.00* | 350 | 70 |
| 1.75 | 200 | 35 |
| 1.50 | 50 | 15 |
| 1.00 | 100 | 10 |
|  | 1,000 | 100 |

* The price at which 50 percent plus 1 Mcf of gas was sold is the major portion price.

http://www.mrm.mms.gov/ReportingServices/PDFDocs/ogphb3.pdf.  (The example assumes all sales are of like quality gas and arm's-length).  *Id*. at 4-5.

C.     **Application of the Major Portion Analysis to the Jicarilla Apache Tribal Leases**

In practice, the application of a major portion analysis is somewhat more complicated. First, under the regulations, the analysis requires information from arms-length sales contracts for like-quality gas produced from the same field or area.  Reliable information on total sales, whether the sales contracts are arms-length or non-arms-length, or information concerning the quality of the gas is not readily available to MMS.[4]

Therefore, in order to meet the lease terms, MMS consulted with several tribes to formulate methodologies that address this data gap.  Two of those methodologies have been rejected by the Interior Board of Land Appeals (IBLA).  In one case, MMS did a major portion analysis using information from the MMS Auditing and Financial System (AFS) database  for leases within the reservation boundaries.[5]  MMS argued that although the AFS database did not differentiate between arms-length and non-arms-length contracts, it included the largest number of sales, monthly sales reports from producers, and essentially met the information requirements for the major portion analysis in certain other respects.  *Burlington Resources Oil and Gas*, 151 IBLA 144 (1999).  In the other case, MMS used the Oklahoma Tax Commission database with similar information and made similar arguments.  *Phillips Petroleum Co.*, 152 IBLA 109 (2000). In both cases, the IBLA found "MMS' use of nonarm's-length sales data required by 30 C.F.R. §

---

[4]There are no comprehensive databases that contain this information and it is not information that gas producers are required to provide to MMS.  *See, e.g.*, *Burlington Resources Oil and Gas Co.*, 151 IBLA 144, 158 (1999) (finding forms used by MMS "could have been enhanced at MMS' will to include a list of nonarms-length transactions and sales from regulated wells (NGPA sales).")

[5]That database contains all information submitted to MMS on the monthly royalty reports.

206.152(a)(3) to be inconsistent with the plain language of the regulation." *Burlington* at 159;

*Phillips* at 117. The IBLA ruled, however, that MMS could still calculate major portion prices if

other data were available that complied with the regulations. *Id.*

MMS as trustee for the lessor and the Jicarilla as the lessor agreed to a different

methodology for Jicarilla leases on the reservation.[6]

The Jicarilla methodology has three components discussed below:

1. The major portion price is based on the price received by the Tribe for the
royalty in kind production pursuant to the provisions of its gas purchase contracts
with third party purchasers.

The Jicarilla Apache Tribe takes a portion of its royalty in kind (RIK).[7] The gas is then

sold to purchasers under one of two long term contracts (RIK contracts). Because those

contracts are, in fact, arms-length, MMS used the RIK sales to calculate monthly major portion

values for leases on the Jicarilla Apache Reservation. A.R. at 135.

2. The price received by the Tribe for its RIK production represents a 1/8 or 1/6
royalty share and the royalty share is extrapolated to the entire 8/8ths or 6/6ths
sales volume on the assumption that the royalty share is representative of the
prices received for the other portion of the gas sold from the Reservation.

During at least part of the period at issue in the pending case, the Jicarilla Apache Tribe's

RIK contracts provided for payment of prices set under the Natural Gas Policy Act (NGPA).[8]

During the remainder of the period, the Tribe received renegotiated prices for the royalty share.

In both periods, the methodology provides that MMS will extrapolate a theoretical sales price

---

[6]That methodology is reflected in the Dear Payor letter. A.R at 351.

[7]RIK refers to the payment of the royalty amount in product rather than money.

[8] The NGPA provided for gradual deregulation of well head prices for certain categories of
natural gas.

from the prices received for the royalty share. Those sales prices were then assumed to be the

prices received from purchasers for the entire volumes sold to arrive at the highest price paid or

offered for the major portion of the gas. *Id*.

      3.  The Jicarilla Apache Reservation is deemed the "area" under applicable
      regulation for purposes of calculating the major portion price.

The majority of the Reservation is within Rio Arriba County, New Mexico, with a small

portion extending into Sandoval County, New Mexico.  The regulations provide at 30 C.F.R. §

206.151 that a field is "a geographic region situated over one or more subsurface oil and gas

reservoirs encompassing at least the outermost boundaries of all oil and gas accumulations

known to be within reservoirs" and "is often designated by oil and gas regulatory agencies in the

respective states."  However, the State of New Mexico does not define "fields" for royalty

valuation purpose.  Rather, the state defines "pools."  The State defines 30 pools that overlie or

are within the reservation boundaries.  These pools overlie one another and/or extend beyond the

reservation boundary.  The regulations provide at 30 C.F.R. § 206.151 that an area is "a

geographic region at least as large as the defined limits of an oil and/or gas field . . . ."  In

addition, the regulations addressing major portion permit the MMS to expand the field to an area

"to obtain a reasonable sample." 30 C.F.R. §§ 206.152(a)(3)(ii) and 206.153(a)(3)(ii) (1995).

Consequently, MMS defined the reservation boundary as the field or area for purposes of major

portion calculations.  *Id.*

**D.**      **The MMS Orders to Perform**

After agreeing with the Jicarilla on the major portion methodology, MMS issued 39

Orders to Perform, directing companies to use that major portion methodology to value gas

produced on the Jicarilla Apache Reservation from January 1984 through June 1995 and pay any

additional royalties owed based on those values.  Many of the companies, including Vastar
appealed those orders.

### E.     The *Bayless* Decisions

The first three decisions on appeals of the Orders to Perform were *Robert l. Bayless*,
MMS-98-0132-IND (*Bayless*), *Dugan Production Corp.*, MMS-98-0139-IND (*Dugan*) and
*Merrion Oil & Gas Corp.*, MMS-98-0228-IND (*Merrion*) (collectively referred to as the *Bayless*
decisions).  On December 22, 2000, DOI issued three almost identical decisions upholding the
Jicarilla major portion methodology.  Those decisions were challenged in the U.S. District Court
for the District of Columbia.  *Bayless v. DOI*, No. 1:01CV00393 (RBW) (D.D.C.).  However,
that case was dismissed after the parties negotiated a settlement agreement (dkt 95).

### F.     The *Vastar* Decision

On March 28, 2007, DOI issued a decision consolidating and granting the appeals of the
Orders to Perform of eight lessees in the *Vastar* decision.[9]  The *Vastar* decision found that the
Jicarilla major portion methodology does not comply with the MMS regulations on a number of
grounds.  A.R. Supp. at 006.  Specifically, DOI determined that 1) there were insufficient sales
data available to perform a major portion analysis under the methodology, 2) there was no
evidence that the Jicarilla's RIK sales were representative of prices received by the gas
producers, and 3) even if the extrapolations of the RIK price to the remaining 7/8 or 5/6 of the

_____

[9]The consolidated appeals are *Vastar Resources Inc.,* MMS-98-0131-IND; *Exxon Company,
U.S.A.*, MMS-98-0134-IND; *Burlington Resources Oil & Gas Company L.P.*, MMS-98-0141-
IND; *Union Texas Petroleum Corporation*, MMS-99-084-IND; *Unicorn Producing Company*,
MMS-99-0106-IND; *Southern Union Exploration Company*, MMS-99-0085-IND; *Williams
Production Company*, MMS-99-0088-IND and *Mobil Exploration & Producing U.S. Inc.*, MMS-
99-0125-IND, MMS-99-0061-IND.

gas volumes were correct, the regulations do not authorize such extrapolations as part of a major

portion methodology. *Id.* at 006-7. In addition, DOI concluded that the Jicarilla methodology

included production with different qualities from different locations and therefore, did not

comport with the regulations requirement that major portion be calculated using like-quality

products. *Id.* at 008 The *Vastar* decision also found that the definition of the area as the

boundaries of the Jicarilla Apache Reservation exceeded the regulatory proscription that an area

is a "geographic region . . . in which oil and/or gas lease products have similar quality,

economic, and physical characteristics." *Id.* At 0010 Finally, DOI held that the use of one-time

settlement values was contrary to the regulatory requirement that the major portion analysis be

based on monthly sales. *Id.* At 010-11. The *Vastar* decision found that the United States' trust

responsibility does not require a different result because the Secretary is not required to ignore

the regulations in determining value. *Id.* at 007.

On May 23, 2007, the Jicarilla filed this action seeking to set aside the *Vastar* decision.

## STANDARD OF REVIEW

Here, the Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.* (APA) is the statute

allowing Plaintiffs to challenge the Assistant Secretary's decisions as agency actions. The APA

requires that there be a final agency action as a prerequisite to judicial review. 5 U.S.C. § 704

("Agency action made reviewable by statute and final agency action for which there is no other

adequate remedy in a court are subject to judicial review."). *See also Champion Int'l.Corp. v.*

*EPA*, 850 F.2d 182 (4th Cir. 1988).

In evaluating the legal sufficiency of final agency actions, the court must apply the

standard of review set forth in the APA. The APA provides that an agency action may be

overturned only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A), (C); *see also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971).

This "arbitrary and capricious" standard of review is highly deferential. *Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C. Cir.)(en banc), *cert. denied*, 426 U.S. 941 (1976).  It presumes the agency's action to be valid.  *Overton Park*, 401 U.S. at 419.  The burden of overcoming this presumption is upon the party challenging the agency action.  *Sierra Club v. U.S. Army Corps of Eng'rs*, 935 F. Supp. 1556, 1565 (S.D. Ala. 1996); *see Druid Hills Civic Ass'n, Inc. v. Federal Highway Admin.*, 772 F.2d 700, 709 n. 9 (11th Cir 1985), *cert. denied*, 488 U.S. 819 (1988). This high degree of deference is particularly important where, as here, the Court is called upon to review determinations involving the agency's technical expertise.  *See Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 375-78 (1989).

The arbitrary and capricious standard of review is narrow, and a court is not to substitute its judgment for that of the agency.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual*, 463 U.S. 29, 43 (1983); *Overton Park*, 401 U.S. at 416.  The standard mandates affirmance if a rational basis for the agency's decision is presented.  *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc*., 419 U.S. 281, 290 (1974).  This is true even when the Court might otherwise disagree. *United States v. Allegheny-Ludlum Steel Corp*., 406 U.S. 742, 749 (1972).   In other words, the courts may not intrude into the discretion of the agency to choose the course of action to be taken.  *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976); *see also Strycker's Bay Neighborhood Council v. Karlen*, 444 U.S. 223, 227-228 (1980); *North Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1539 (The court should set aside administrative decisions only for

-10-

substantial reasons, "...not simply because the court is unhappy with the result reached.").

     Instead, the court's only role is to determine whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh*, 490 U.S. at 378 (1989) (citing *Overton Park*, 401 U.S. at 416).  The court should find in favor of the agency if the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made." *See Baltimore Gas & Electric Co. v. NRDC*, 462 U.S. 87, 105 (1983).

## ARGUMENT

     The Jicarilla argue that the *Vastar* decision is flawed in three ways.  First, it alleges that the decision is arbitrary and capricious because it represents a change in agency position without justification.   Pl. Mem. at 11.  Second the Jicarilla argue that the decision is invalid because it relies on the MMS 1988 major portion regulations rather than the Jicarilla lease terms.  *Id.* at 11-12.  Finally, it argues that the decision constitutes a breach of DOI's fiduciary duty to protect the interests of Indian tribes. *Id.* at 12.  The Jicarilla is wrong on all counts.

     The *Vastar* decision is a reasonable conclusion that the relevant regulatory provisions do not support the Jicarilla major portion methodology and therefore, is entitled to deference.  Administrative agencies are accorded considerable deference in their construction of complex statutory schemes.  *Chevron U.S.A. v. NRDC*, 467 U.S. 837 (1984); *see also Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (Federal courts "must give substantial deference to an agency's interpretation of its own regulations.").  Moreover, an agency's interpretation of its own regulations is "of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).  For the reasons

-11-

set forth below, this Court should deny Plaintiff's motion for summary judgment.

**I.     The *Vastar* Decision Is Not an Unexplained Departure from Agency Precedent.**

The Jicarilla would have this Court believe that the *Vastar* decision is a departure from agency precedent without explanation and therefore, is arbitrary and capricious.  Pl. Mem. at 13-16.   However, DOI did explain that the Jicarilla major portion methodology was unlawful under the regulations. A.R. Supp. at 001-12.   It is just that methodology that forms the basis for the *Bayless* decisions.[10]   Further explanation of the decision would serve no purpose.

DOI reconsidered the Jicarilla major portion methodology and the applicable regulations in the context of appeal of the specific Orders to Perform pending before it.  An administrative agency has the inherent power to reconsider its decisions, regardless of whether the applicable statute and agency regulations expressly provide for such review.  *See e.g.*, *United Gas Improvement Co. v. Callery Properties*, 382 U.S. 223, 229 (1965) ("An agency, like a court, can undo what is wrongfully done by virtue of its order").  "Administrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider."  *Trujillo v. General Electric Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980).  *See also*, *Spanish Int'l Broadcasting Co. v. FCC*, 385 F.2d 615, 621 (D.C. Cir. 1967) ("The power to reconsider is inherent in the power to decide.") (citation omitted).

Courts have consistently found that the exercise of the agency's inherent authority is particularly appropriate if used to correct prior erroneous determinations or to comply with

---

[10]It should be noted that *Bayless*, *Merrion*, and *Dugan* are the only decisions that rely on the flawed methodology.  As noted above, the *Bayless* and *Merrion* decisions were challenged in district court but were dismissed as part of a settlement agreement.

applicable law.  In *Saulque v. United States*, 663 F.2nd 968, 975 (9th Cir. 1981), a case involving

an Indian allotment claim, the court held that the Secretary of the Interior can "change his

opinion and position in this case in order to comply with the law."  *See also*, *Federal Crop Ins.*

*Corp. v. Merrill*, 332 U.S. 380, 384 (1947) (holding that the government is not bound when its

agent enters into an agreement that falls outside the agent's Congressionally delegated

authority); *Belville Mining Co. v. U.S.*, 999 F.2d 989 (6th Cir. 1993) (Interior has the authority to

reconsider and reverse earlier determinations if they are erroneous); *Gray v. Johnson*, 395 F.2d

533, 537 (10th Cir.), *cert. denied*, 392 U.S. 906 (1968) ("Agents of the government must act

within the bounds of their authority; and one who deals with them assumes the risk that they are

so acting.").

       The *Vastar* decision could not be more clear that the Jicarilla major portion methodology

in the Orders to Perform on appeal was in violation of the regulations and therefore unlawful.

DOI concluded "[B]ased on the foregoing, I conclude that MRM's [Minerals Revenue

Management] major portion methodology for the Tribal leases does not meet the requirements of

the regulations and is therefore not a reasonable method to use to implement the regulations.  As

a result, the subject orders, as they relate to major portion, cannot be sustained."  A.R. Supp. at

008.  DOI changed its position to comply with the law.  *Saulque.*, 663 F.2nd at 975.  The Jicarilla

have simply failed to articulate what further explanation will accomplish.

**II.    The *Vastar* Decision Correctly Found That the Jicarilla Lease Terms and the Regulations are Consistent.**

       The Jicarilla argue that the terms of Lease ¶ 3(c)  are inconsistent with the language in

the  regulations and therefore, the language of Lease ¶ 3(c)  should control.[11]  Pl. Mem. at 17-19.

The Jicarilla base this argument on the provision of 30 C.F.R. § 206.150(b) that provides "[i]f

the specific provisions of any . . . oil and gas lease subject to the requirements of this subpart are

inconsistent with any regulation in this subpart, then the lease . . . shall govern to the extent of

that inconsistency."  However, this argument is without merit because there is no inconsistency

between either the 1988 or earlier regulations and  Lease ¶ 3(c) .

    The *Vastar* decision specifically addresses the language of the 1988 regulations, the

Bureau of Indian Affairs (BIA) regulations[12] and Lease ¶ 3(c)  and found that

> The Jicarillla Apache tribal oil and gas leases provide in section c. Rental and Royalty,
> that value for royalty purposes may, in the discretion of the Secretary, be calculated on
> the basis of the highest price paid or offered at the time of production for the major
> portion of gas sold from the where the leased lands are situated.  Similar language
> appears in the regulations at 25 C.F.R. § 211.13(a) (1987) and at 30 C.F.R §
> 206.152(a)(3)(i) (1991).  Thus, the lease term and the regulations are consistent, and the
> provisions of 30 C.F.R. § 206.150 (b) concerning the primacy of lease terms where they
> differ from regulations, is inapplicable.

A.R. Supp. at 003.

    The Jicarilla argue that this finding is incorrect because the 1988 regulations describe a

major portion methodology that generates less revenue for tribes than that in the lease.  Pl. Mem.

at 18.  This is because, the Jicarilla argue, Lease ¶ 3(c) requires that 'value of production for

royalty purposes be based on the greater of (1) the price received by the lessee, or (2) the highest

price paid for a major portion of like-quality production."  Pl. Mem. at 18 citing A.R. Supp. at

---

[11]If the Jicarilla believe that the Lease ¶ 3(c) and the regulations are inconsistent, it is unclear
why it did not challenge those regulations in 1988.

[12]The BIA issued regulations in 1984 that address major portion with the same language found in
Lease ¶ 3c.  *See*  25 C.F.R. § 211.13(a) (1987)

002.  The Jicarilla allege that the 1988 regulations do not result in the highest price paid or

offered for a major portion of the gas but rather result in a "volume-weighted *median* price for

the *majority* of the gas sold."  *Id.*   This is because the regulations provide that a major portion

shall be calculated by using "that price at which 50 percent (by volume) plus 1 mcf of the gas

(starting from the bottom) is sold."  30 C.F.R. §§ 206.152(a)(3)(ii) and 206.153(a)(3)(ii) (1988-

1995).[13]

      However, DOI has consistently interpreted the 50% plus one method as conforming with

the lease terms.  This position is not unique to the Jicarilla since almost all Indian leases contain

the language of Lease ¶ 3(c).  In *Shoshone Indian Tribe of the Wind River Reservation v. United

States*, 56 Fed. Cl. 649 (2003), MMS testified that "[t]he 'median base floor price' method

provides a reasonable value for royalty purposes, statistically represents the price for a major

portion of like-quality production sold from the same field or area, and fulfills the intent of …

the Indian leases and applicable regulations."  A.R. at 467.  In addition, in none of the appeals

that have challenged the MMS calculations of major portion prices has DOI found the language

of  Lease ¶ 3(c) to be inconsistent with the regulations although the methodology may have been

inconsistent with the regulations in other ways.  *See, e.g.*, *Burlington Res.*, 151 IBLA 157, 159;

*Phillips Petroleum*, 152 IBLA at 114,116; *Medallion Exploration*, MMS-98-0082-IND at 4-5

(March 13, 2003).  The Jicarilla have failed to show why this long standing interpretation  under

both the 1988 and pre-1988 regulations does not deserve deference.

---

[13]Put another way, the regulations require that the value of the gas is the price paid for a major
portion of the gas, defining "major portion" as 50 percent (by volume) plus 1 mcf.

**III.    The Vastar Decision Is Not Contrary to DOI's Fiduciary Duty to the Jicarilla**.

The Jicarilla argue that DOI had a fiduciary duty to maximize revenues produced from oil and gas resources on the Jicarilla Apache Reservation.  Pl. Mem. at 19-27.  The Jicarilla further argue that DOI has failed to comply with this fiduciary obligation.  *Id*. at 22.  However, it is the Jicarilla that has failed to establish that DOI has a trust responsibility to adopt a major portion methodology that violates its regulations.

DOI found that an agency must follow its own regulations and that the United States' trust responsibility did not require a different result.  A.R. Supp. at 007.   The *Vastar* decision concludes that "while the Secretary, when acting in a fiduciary capacity (and when confronted with several alternatives), must choose the alternative that is in the best interests of the Indian tribe, the scope of that choice is necessarily limited to those alternatives that are 'reasonable' and are consistent with the requirements of the regulations."  *Id.* at 8.

This finding is fully consistent with case precedent.  It is well established and the Jicarilla concede that an agency must follow its own regulations.  Pl. Mem. at 18-19, citing A.R. Supp.  at 7; *Vitarelli v. Seaton*, 359 U.S. 535 (1959); *Service v. Dulles*, 354 U.S. 363 (1957); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).  "The relevant statutes and regulations 'define the contours of the United States' fiduciary responsibilities'" *Cobell v. Norton*, 240 F.3d 1081, 1098 (D.C. Cir. 2001) (citation omitted).  The notion that DOI's fiduciary duty requires the Secretary to do something that is not in accordance with the major portion regulations has been rejected.  *Pawnee v. United States*, 830 F.2d 187, 192 (Fed. Cir. 1987).

The Jicarilla argue that *United States v. Navajo Nation*, 537 U.S. 488 (2003) cited in footnote 2 of the *Vastar* decision, is inapposite because the Jicarilla are not attempting to

-16-

establish a "money-mandating" duty as described in that case and also that case involved a coal lease. Pl. Mem. at 22-24. Neither of those arguments counters the relevance of the holding in *Navajo* with general applicability, i.e. absent a tribe's identification of a specific duty-creating law or regulation, and an allegation that the government failed to perform that duty according to the law, there is no basis for finding a breach. 537 U.S. at 493. In the instant case, the Jicarilla have not only failed to identify a specific duty-creating law or regulation that requires use of the Jicarilla major portion methodology but DOI has found that methodology to run counter to regulation.

Furthermore, the Jicarilla ignore the point for which DOI cited the *Navajo* decision. The Jicarilla argue that DOI has a duty under the IMLA to "maximize" tribal mineral revenues, based on a series of cases preceding *Navajo*. Pl. Mem. at 21. The Supreme Court specifically ruled in *Navajo* however, that no such duty exists under the IMLA, but rather that the purpose of the statute was to provide tribes with a profitable source of revenue and to remove obstacles to leasing Indian land for mineral development. 537 U.S., at 511, n. 16. While, as the Jicarilla point out, the Supreme court limited the rest of its opinion to coal leasing, this holding by the Court was based on the legislative history of the IMLA as a whole (which also applies to oil and gas) and on its previous decision in *Cotton Petroleum Corp. V. New Mexico*, 490 U.S. 163, 179 (1989), an oil and gas case. The Jicarilla have not met its burden of establishing a violation of a fiduciary duty by DOI.

## IV.    The *Vastar* Decision Is a Reasonable Interpretation of the Regulations and Should Be Upheld.

The Jicarilla argue that *Bayless* decisions that upheld the Orders to Perform with the Jicarilla major portion methodology were correctly decided. Pl. Mem. at 27-37. The Jicarilla

are wrong for a number of reasons that are fully explained in the *Vastar* decision. The fundamental flaw in the *Bayless* decisions is that they evaluated the Jicarilla major portion methodology only for conformity with Lease ¶ 3(c) and not the regulations.

### A.    The Jicarilla Major Portion Methodology Incorrectly Relied on Less than 50 Percent of the Arm's Length Sales.

Since most of the gas on the Jicarilla Apache Reservation was sold under non-arm's length contracts, the Jicarilla major portion methodology relies on the RIK contracts to establish the sales price. However, the Jicarilla concede that the RIK sales represented approximately 25% of the arm's length sales from the Reservation. Pl. Mem. at 30. That is substantially below the "50 percent (by volume) plus 1 mcf of the gas (starting from the bottom)" that is required by the regulations. 30 C.F.R. §§ 206.152(a)(3)(ii) and 206.153(a)(3)(ii) (1988-1995). The *Vastar* decision properly held that reliance on such sales was not in compliance with the regulations. A.R. Supp. at 007.

### B.    The RIK Sales Were Improperly Extrapolated to Reflect Other Sales on the Reservation.

Under the methodology used to calculate the major portion for the Jicarilla Apache Tribal leases, the RIK portion of the gas represents the one-eighth or one-sixth royalty share. The methodology then extrapolated the one-eighth or one-sixth share to the entire eight-eights or six-sixths sales volume and assumed the value for the one-eighth or one-sixth royalty share was representative of the prices received for the other portion of the gas sold from the Reservation. The *Vastar* decision correctly found that there was no evidence that the RIK contracts were, in fact, representative of other sales contracts and, even if that assumption was accurate, the regulations do not authorize extrapolations such as that used. *Id.*

-18-

**C.    The Jicarilla Major Portion Methodology Did Not Use Like-Quality Products.**

The regulations require that "[T]he major portion will be calculated using like-quality lease products." 30 C.F. R. § 206.152(a)(3)(ii) (1991). The *Vastar* decision found that evidence in the record established that the methodology included production of different qualities from different locations without distinguishing between differences in that gas, including such factors as different Btu values or levels of carbon dioxide. A.R. Supp. at 008. The methodology also did not distinguish between processed and unprocessed gas, although the regulations require that separate major portion calculations must be prepared for processed and unprocessed gas. 30 C.F.R. § 206.153(a)(3), *see also,* A.R. Supp. at 009.

**D.    The Designation of the Reservation as the "Field" or "Area" Was Contrary to the Regulations.**

The regulations provide that the major portion price will be calculated using like quality gas "from the same field (or, if necessary to obtain a reasonable sample, from the same area.)" 30 C.F.R. § 206.152(a)(3) (1988). The Jicarilla major portion methodology defined the "field" or "area" as the Jicarilla Apache Reservation. The State of New Mexico Oil and Gas Commission has identified thirty pools that overlay or are within the boundaries of the Reservation. A R. Supp. at 009. DOI determined in the *Vastar* decision that even assuming, arguendo, that the "field" did not provide a "reasonable sample" and that there was justification for considering the broader "area," it did not follow that the methodology could define the area to include thirty separate pools from many different formations, including coalbed methane, absent a showing of similar characteristics. A.R. Supp. at 010.

**E.    The Sales Values Were Not Calculated on a Monthly Basis**.

-19-

Finally, the regulations require that major portion be based on sales for each month.  30 C.F.R. § 206.152(a)(3) (1991).  The Jicarilla major portion methodology included one-time settlement amounts.  The *Vastar* decision found that use of those one-time settlement payments was not authorized by the regulations.  A.R. Supp. at 010-11.

## V.    Even Assuming Arguendo, That the Court Finds the *Vastar* Decision Flawed, the Only Remedy Is Remand to the Agency.

The Jicailla argue, that if this Court finds flaws in the *Vastar* decision, the remedy should be an order requiring that DOI enforce the Orders to Perform or in the alternative direct DOI to develop a new major portion methodology.  Pl. Mem. at 24-27, 37-41.  Neither remedy is appropriate.[14]

As the Jicarilla acknowledge, the correct action, if this Court finds that the *Vastar* decision is flawed, is a remand to the agency.  Pl. Mem. at 24-25.  If the record does not support the agency's action or the agency has not considered all relevant factors, then "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).  The Jicarilla have simply failed to provide any basis for any other relief.

The Jicarilla's long, but conclusory, argument fails to give any reason why enforcement of the Orders to Perform is the "best" way for this Court to ensure that DOI fulfills any alleged duty to maximize tribal revenues.  Furthermore, the Jicarilla's extended denunciation of MMS fails to state how a remand with instructions to create a different major portion methodology will

---

[14]The Jicarilla are pursuing another remedy.  It has filed an action for breach of trust in the Court of Federal Claims.  *Jicarilla Apache Nation v. United States*, No. 02-25-FMA (Fed. Cl. filed Jan. 8, 2002).

solve the data gaps discussed above that caused the methodology to be properly rejected in the

*Vastar* decision.

## CONCLUSION

For the foregoing reasons, this Court should deny the Jicarilla motion for summary

judgment and dismiss this case with prejudice.

Dated this 7th  day of March, 2008.

Respectfully submitted,

RONALD J. TENPAS,
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


 /s/ Ruth Ann Storey          
         RUTH ANN STOREY
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
P. O. Box 663
Washington, D. C. 20044-0663
         Telephone: (202) 305-0493
                  ruth.ann.storey@usdoj.gov

Of Counsel:

Stephen L. Simpson
Assistant Solicitor for Trust Responsibility
Division of Indian Affairs
Office of the Solicitor